No. 26-2124

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STATE OF NEBRASKA,

Defendant-Appellee,

OREL ALLIANCE and MATTERS ON TOMORROW, TRUE POTENTIAL
SCHOLARSHIP,

Movants-Appellants.

_____

On Appeal from the United States District Court for the District of
Nebraska, No. 8:26-cv-0172

_____

## UNITED STATES' OPPOSITION TO MOTION
## FOR PARTIAL STAY PENDING APPEAL

_____

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ANDREW M. BERNIE
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*
*andrew.bernie@usdoj.gov*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT .......................................................................................................3

    A.    Statutory Background.............................................................................3

    B.    Factual Background..............................................................................6

ARGUMENT .......................................................................................................8

    I.    Movants have no likelihood of success.................................................8

    A.    Movants will not succeed in challenging the judgment, even if this Court were to reverse the district court's denial of intervention..................................8

    B.    Movants also will not succeed in challenging the denial of intervention .........................................................17

    II.    The other stay factors strongly favor United States ...........................20

CONCLUSION ...................................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Animal Legal Def. Fund, Inc. v. Vilsack,*
    111 F.4th 1219 (D.C. Cir. 2024) ...................................................................18

*Brady v. Nat'l Football League,*
    640 F.3d 785 (8th Cir. 2011) ........................................................................8

*Get Loud Arkansas v. Jester,*
    171 F.4th 1058 (8th Cir. 2026) ...................................................................19

*INS v. Chadha,*
    462 U.S. 919 (1983) ........................................................................... 2, 15, 16

*Jacam Chem. Co. 2013, LLC v. Shepard,*
    101 F.4th 954 (8th Cir. 2024)........................................................................9

*Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms, and
    Explosives,*
    78 F.4th 1011 (8th Cir. 2023)......................................................................21

*Murphy v. National Collegiate Athletic Association,*
    584 U.S. 453 (2018) .....................................................................................17

*Ng v. Bd. of Regents of Univ. of Minnesota,*
    64 F.4th 992, 999 (8th Cir. 2023)................................................................20

*Nken v. Holder,*
    556 U.S. 418 (2009) .......................................................................................8

*Powell v. Ryan,*
    855 F.3d 899 (8th Cir. 2017).......................................................................20

*R.I. Fed'n of Teachers. v. Norberg,*
    630 F.2d 850 (1st Cir. 1980) .......................................................................19

*Saavedra v. Murphy Oil U.S.A., Inc.,*
    930 F.2d 1104 (5th Cir. 1991).....................................................................19

*Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013)......................................................................20

Appellate Case: 26-2124    Page: 3    Date Filed: 06/22/2026 Entry ID: 5653092

*U.S. v. Glens Falls Newspapers*, Inc.,
  160 F.3d 853 (2d Cir. 1998) ...............................................................19

*United States v. Alabama*,
  691 F.3d 1269 (11th Cir. 2012) ..........................................................20

*United States v. Metro St. Louis Sewer District*,
  569 F.3d 829 (8th Cir. 2009) ..............................................................17

*United States v. Walz*,
  No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026) .................... 11, 13

*United States v. Windsor*,
  570 U.S. 744 (2013) ................................................................. 2, 15, 16

*Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*,
  840 F.2d 72 (D.C. Cir. 1988)...............................................................19

## Statutes and Court Rules

8 U.S.C. § 1101(a)(33)........................................................................12

8 U.S.C. § 1611 ................................................................................12

8 U.S.C. § 1612 ................................................................................12

8 U.S.C. § 1623 ..................................................................................3

8 U.S.C. § 1623(a) ..................................................................... 1, 3, 13

Neb. Rev. Stat. § 85-502 ......................................................................1

Neb. Rev. Stat. § 85-502(1) ..................................................................4

Neb. Rev. Stat. § 85-502(9)(a)...................................................... 4, 5, 11

Neb. Rev. Stat. § 85-1907(3) .................................................................1

Neb. Rev. Stat. § 85-2102(6) .................................................................1

Neb. Rev. Stat. § 85-3202(6) .................................................................1

Fed. R. App. P. 8(a)(1)..........................................................................7

Fed. R. Civ. P. 24(c)............................................................................19

Appellate Case: 26-2124   Page: 4   Date Filed: 06/22/2026 Entry ID: 5653092

**Other Authority**

Fed. Prac. & Proc. Civ. § 1914 ....................................................................19

iv

# INTRODUCTION

Federal law provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Nebraska nonetheless provided in-state tuition rates at public colleges to aliens who are not lawfully present but satisfy residence requirements, even as U.S. citizens from other states must pay higher tuition rates. *See* Neb. Rev. Stat. §§ 85-502, 85-1907(3), 85-3202(6), and 85-2102(6).

The United States sought invalidation of these provisions as applied to aliens who are not lawfully present in the United States. Because Nebraska agreed with the United States that federal law expressly preempts these provisions, the parties requested that the district court enter a consent judgment. Putative intervenors (Movants)—two organizations that fund and assist immigrants pursuing higher education in Nebraska—sought intervention. The district court denied intervention, holding that Movants failed to establish Article III standing. But the district court did not rubber-stamp the parties' motion. The court ordered the parties to submit additional briefing; allowed Movants to submit an amicus brief; and declined to give any deference to the parties' views on whether federal law preempts the challenged provision. After conducting a thorough review of the relevant statutes, and engaging

at length with the arguments Movants made as amicus, the court concluded that Nebraska's scheme was preempted, and permanently enjoined the statutes' enforcement.

Movants seek an order from this Court that would require Nebraska to resume enforcement of an unconstitutional state statutory scheme. There is no basis for that motion. For starters, Movants seek a partial stay of the *judgment*, but devote most of their motion to arguing that the district court wrongly denied them *intervention*. Even if this Court reverses the denial of intervention, that would simply give Movants standing to challenge the judgment—to obtain a partial stay, Movants must at the very least show that they will subsequently succeed in challenging the judgment. They wholly fail to do so; Movants devote a single paragraph to the merits, promising only that "[f]ull merits briefing will show that Nebraska's" laws are consistent with Section 1623(a). And as set forth below, this legal question is not difficult; Section 1623(a) preempts the challenged provisions. Movants also argue that Nebraska stripped the district court of jurisdiction by adopting a litigating position that aligned with the position taken by the United States. The Supreme Court has squarely rejected that argument. *See United States v. Windsor*, 570 U.S. 744 (2013); *INS v. Chadha*, 462 U.S. 919 (1983).

This Court can deny relief without even considering the district court's denial of intervention. In any event, that decision was correct. Movants failed to establish

2

standing. Movants fund tuition costs for aliens to attend college in Nebraska, that philanthropy is entirely voluntary, and Movants receive nothing in return; their desire to continue making voluntary donations under Nebraska's preempted scheme does not give rise to a cognizable injury for Article III standing purposes. And in any event, to obtain intervention, a putative intervenor must demonstrate that they have a legally sufficient claim or defense; Movants cannot meet that requirement, and intervention would also have been properly denied as legally futile—for the same reasons the district court gave in entering the judgment.

## STATEMENT

### A. Statutory Background

**1**. In 1996, Congress passed, and President Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides as follows:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

Appellate Case: 26-2124     Page: 8     Date Filed: 06/22/2026 Entry ID: 5653092

**2**. Like many states, Nebraska charges its residents one price for tuition and charges non-residents considerably more. *See, e.g.*, Add.22 (University of Nebraska-Omaha example showing tuition and fees of $9,768 for a "Nebraska Resident" and $26,092 for "Out-of-State Residents").

A person is deemed a resident of Nebraska if he or she "has established a home in Nebraska where he or she is habitually present for a minimum of one hundred eighty days, with the bona fide intention of making this state his or her permanent residence, supported by documentary proof." Neb. Rev. Stat. § 85-502(1). Residency is extended to any person if their parent or guardian has "established a home in Nebraska where such parents, parent, or guardian are or is habitually present with the bona fide intention to make [Nebraska] their, his, or her permanent residence, supported by documentary proof." *Id.* § 85-502(2).

Section 85-502 extends Nebraska residency to an unlawful alien if he or she has merely lived in Nebraska for at least 180 days, is habitually present with the bona fide intention to make Nebraska their permanent residence, and "has applied to or has a petition pending" with federal immigration agencies "to attain lawful status under federal immigration law." *Id.* § 85-502(5). Section 85-502(9)(a) allows aliens to meet the residency requirements if the student resided with their parent, guardian, or conservator while attending a high school in the state, or a school in the state which elected to not meet accreditation requirements, and they: graduated from

4

Appellate Case: 26-2124    Page: 9    Date Filed: 06/22/2026 Entry ID: 5653092

high school or obtained a GED in Nebraska; resided in Nebraska for at least three years before the date of his or her high school graduation; have registered as an entering student at a postsecondary educational institution no earlier than the fall 2006 semester; and submit an affidavit stating that they will apply to become a permanent resident at his earliest opportunity. *Id.* § 85-502(9)(a).

Accordingly, the tuition rate for unlawful aliens in Nebraska who satisfy Section 85-502's criteria is the same tuition rate as other Nebraska residents. However, a United States citizen that is not eligible for in-state tuition under Section 85-502, due to residency requirements, is required to pay higher, nonresident tuition. The other challenged statutes similarly provide postsecondary education benefits to unlawful aliens who qualify as state residents, but not to non-resident citizens and nationals. *Id.* § 85-1907(3) (providing financial assistance to postsecondary educational institutions who then issue such awards to an "eligible student" who is, among other criteria, defined as "a resident student who is domiciled in Nebraska as provided by section 85-502"); *id.* § 85-3202(6)(d) (Nebraska's Door to College Scholarship Act, which provides financial assistance to any individual who is, among other criteria, "a resident student who is domiciled in Nebraska as provided by section 85-502"); *id.* § 85-2102(6) (providing for scholarships to any individual who is, among other criteria, "a student attending a Nebraska high school with a

5

Appellate Case: 26-2124    Page: 10    Date Filed: 06/22/2026 Entry ID: 5653092

reasonable expectation that such student will meet the residency requirements of Section 85-502 upon graduation from a Nebraska high school").

**B. Factual Background**

**1.** On April 21, 2026, the United States filed this suit against Nebraska, contending that the challenged laws are preempted. Nebraska agreed with the United States that Section 1623(a) preempts the challenged statutes, and the parties filed a joint motion for a consent judgment the same day.[1]

On April 24, the district court entered an order that, although "recogniz[ing] that the Complaint sets out much of the law that supports the Joint Motion," directed the parties to submit briefing on the substantive legal issues raised by the joint motion, as well as the court's jurisdiction to enter it. Dist. Ct. Dkt. No. 15. Movants filed a motion to intervene on May 7, supported by a proposed answer to the Complaint. Dist. Ct. Dkt. No. 18-22. The district court denied intervention but allowed Movants to file an amicus brief opposing the motion for entry of a consent judgment, and Movants filed that amicus brief. Dist. Ct. Dkt. No. 43-44. Movants

---

[1] Movants contend that the parties "[c]oordinate[d]" the lawsuit, and make much of the timing of the joint motion. Mot. 4. But before suing a state, the Department of Justice Manual *requires* (with narrow exceptions) that the Department provide advance notice to the state to, among other possible outcomes, "[r]esult in settlement of the action or claim in advance of its filing on terms acceptable to the United States." Justice Manual 1-10.100. Nebraska agreed with the United States that its statutes were preempted and, having agreed to the substance and form of a proposed judgment, it was entirely proper to present that proposed judgment to the court shortly after the United States filed its complaint.

6

also asked the district court to stay consideration of the motion for a consent judgment pending an appeal of the district court's denial of intervention. Dist. Ct. Dkt. No. 46.[2]

On June 3, 2026, the district court entered a combined order explaining its decision to deny intervention, Add.60-79, denying Movants' motion to stay consideration of the motion for a consent judgment, Add.79-83, and granting the motion for a consent judgment (with non-substantive changes to the proposed language of the judgment), Add.83-106. The district court did "not defer to the Parties' conclusion but" instead made an "independent inquiry and determination." Add.91. After thoroughly analyzing the parties' briefing, and Movants' contrary arguments (as well as the contrary arguments of an additional amicus), the district court concluded that it had subject-matter jurisdiction, Add.84-90, that the challenged statutes are preempted, Add.90-102, and that the consent judgment was appropriate, Add.102-105.

---

[2] Contrary to Movants' argument, Mot. 2, that request likely did not comply with Fed. R. App. P. 8(a)(1). Movants sought a stay of the district court's consideration of the consent judgment before the district court decided the motion for judgment—i.e., a form of a stay of proceedings—but did not seek a stay of the judgment itself in the event that the district court nonetheless decided to enter it. Since the motion must be rejected for the reasons set forth below, the United States does not further press this argument.

Appellate Case: 26-2124    Page: 12    Date Filed: 06/22/2026 Entry ID: 5653092

**ARGUMENT**

Courts addressing a motion for a stay pending appeal consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quotation marks omitted). "The most important factor is the appellant's likelihood of success on the merits." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011).

Movants have no possibility of prevailing on any challenge to the consent judgment, even if this Court were to reverse the district court's denial of intervention. In any event, the district court also correctly denied intervention. The other *Nken* factors likewise weigh against relief.

**I.      Movants have no likelihood of success.**

**A.      Movants will not succeed in challenging the judgment, even if this Court were to reverse the district court's denial of intervention.**

Movants seek a partial stay of the district court's final judgment permanently enjoining enforcement of the challenged provisions as to aliens not lawfully present in the United States. Mot. 2. Yet most of Movants' argument focuses on the district court's denial of intervention. Mot. 9-15.

8

This distinction matters. Although Movants are correct that they would need to prevail on the intervention issue in order to obtain any relief from this Court, doing so would not be sufficient to obtain relief from the judgment. To do that, they would also need to show that the judgment itself was erroneous; if they were permitted to intervene, but the judgment was correct, there would be no basis for staying it.

Thus, to even theoretically be entitled to the partial stay they seek, Movants must show they will likely succeed in a challenge to the final judgment, not the district court's intervention ruling. Movants do not make this showing.

**1.** Section 1623(a) preempts the challenged provisions, which (a) provide postsecondary education benefits to unlawful aliens; (b) on the basis of residence within Nebraska; (c) while not providing the same benefits to non-resident United States citizens and nationals. Notably, Movants devote just one paragraph to this issue, and that paragraph merely promises that future merits briefing will demonstrate that the state statutes are not preempted. Mot. 19-20. The Court would be justified in treating the preemption question as forfeited for purposes of this motion. *Jacam Chem. Co. 2013, LLC v. Shepard*, 101 F.4th 954, 963 (8th Cir. 2024). In any event, the issue is not difficult.

**a.** The Nebraska statutes provide a "postsecondary education benefit" to unlawfully present aliens. Substantially reduced tuition is obviously a "benefit," in both the dictionary and everyday use of the term. It is an "advantage or privilege

9

something gives." Black's Law Dictionary, *Benefit* (12th ed. 2024); *see also* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/benefit ("something that produces good or helpful results or effects or that promotes well-being"). Dictionaries from around the time of IIRIRA's enactment provide similar definitions. *See, e.g.*, Meriam-Webster's Collegiate Dictionary 106 (10th ed. 1997) (defining the term as, inter alia, "ADVANTAGE" and "useful aid"). And it is a "postsecondary education" benefit—i.e., it is a benefit for education after high school.

Although the text is clear and no recourse to legislative history is needed, that history simply could not be clearer that Congress intended for Section 1623 to encompass in-state tuition rates. A House conference committee report, commenting on the language that was ultimately enacted as Section 1623, states that "[t]his section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." H.R. Rep. No. 104–828, 2d Sess. p. 240 (1996). And in any event, it is obvious that any ordinary reader with even a baseline understanding of college education in the United States (in 1996 or 2026) would instantly understand the relevant language—"eligible on the basis of residence within a State . . . for any postsecondary education benefit"—to encompass in-state tuition. The district court correctly rejected Movants' contrary arguments. Add.100-01.

Appellate Case: 26-2124    Page: 15    Date Filed: 06/22/2026 Entry ID: 5653092

**b.** These benefits are provided on the basis of residence. That, too, could not be more straightforward. In a provision titled "State postsecondary educational institution; residence requirements," Nebraska requires—in addition to graduation from a Nebraska high school (itself a residence-based classification)—continuous residence in Nebraska "for at least three years before the date the student graduated from the high school." Neb. Rev. Stat. § 85-502(9)(a). Movants themselves appropriately classify the distinctions drawn as distinctions between the rate paid by "out-of-state students" and "the tuition rate paid by in-state students." Mot. 3. That is a residence-based classification.

Movants reference a decision from a district court in Minnesota upholding a Minnesota statute providing postsecondary education benefits to unlawful aliens. *United States v. Walz*, No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026), *appeal pending*, No. 26-1886 (8th Cir.). The district court in that case concluded that the statutes at issue there do not provide benefits "on the basis of residence" because they require graduation from a Minnesota high school and attendance at a Minnesota high school for three years, but do not include an explicit "residence" requirement. The United States has appealed that decision, which is incorrect, to this Court. But in any event, the *Minnesota* court expressly distinguished that case from a statute like this one, noting that "Texas law explicitly ties eligibility to residency," 2026 WL 851231, at *9, so its conclusion in this regard is plainly irrelevant here.

11

Movants do not renew their argument, advanced in the district court, that Nebraska's scheme does not provide benefits on the basis of residence because Nebraska's definition of residence differs from the definition at 8 U.S.C. § 1101(a)(33) (within the Immigration and Nationality Act (INA)), which IIRIRA incorporates into the chapter that contains Section 1623(a). In addition to being forfeited, the point is meritless. For one, as the district court noted, Add.99-100, there is no meaningful difference between the state and federal definitions. In any event, the reference in Section 1623(a) to an alien's being "eligible on the basis of residence within a State," in a preemption clause addressing state-provided benefits, refers to whether the alien is regarded as a resident under state law. The INA's definition of "residence," by contrast, serves a very different purpose—defining who qualifies as a permanent resident and is otherwise qualified for federal programs and benefits. *See, e.g.*, 8 U.S.C. §§ 1611-12, 1621.

This argument also proves far too much. States of course employ a variety of different methods of determining who qualifies as a state resident for purposes of in-state tuition and, on this reading, a state law would be preempted only if it happened to copy and paste Section 1101(a)(33) directly into the state code, and a state could avoid preemption entirely by slightly tweaking the definition of residence. That is nonsensical.

12

Appellate Case: 26-2124    Page: 17    Date Filed: 06/22/2026 Entry ID: 5653092

**c.** There can be no serious argument that Nebraska does not make the same benefits available to non-resident U.S. citizens and nationals. Movants note that Nebraska's scheme "applies regardless of immigration status," Mot. 3, and that Nebraska's legislature "designed the challenged laws to be neutral between citizens and immigrants," Mot. 20. That misses the point. The whole point of Section 1623(a) is to require a distinction based on immigration status, such that if citizens in Nebraska are entitled to a lower tuition rate than citizens who live in another state, even in-state aliens who are unlawfully present must pay the higher, out-of-state rate.

The *Minnesota* court held that unlawfully present aliens are eligible for in-state tuition on the basis of residence as a class provided that a *single* citizen or national of the United States who is not a resident of the State is also eligible. 2026 WL 851231, at *10. As the district court in this case noted, it does not appear that any U.S. citizen or national who does not qualify as a Nebraska resident is eligible for in-state tuition. Add. 102. In any event, this Court is unlikely to agree with the *Minnesota* court's analysis when it decides this issue. The district court there fixated entirely on Section 1623(a)'s reference to "a citizen or national of the United States." But Section 1623(a) says that "*an* alien shall not be eligible on the basis of residence within a State" for a postsecondary education benefit unless "*a* citizen or national of the United States is eligible for such a benefit (*in no less an amount, duration, and scope*) without regard to whether the citizen or national is such a resident." 8 U.S.C.

13

§ 1623(a) (emphases added). The meaning of that parallel structure is straightforward. *An* alien is eligible for a benefit on the basis of residence within a state only insofar and to the same extent that an identically situated citizen or national is eligible for the same benefit without regard to his or her resident status. It does not mean that Section 1623(a) is entirely defeated by the presence of a single nonresident U.S. citizen who receives the relevant benefit, regardless of the circumstances. And that is not only the only plausible reading of the text but also the only way the federal statute makes any practical sense.

2.    With essentially nothing to say about the legality of Nebraska's scheme, Movants primarily argue that the district court lacked jurisdiction to enter the judgment. That is incorrect. Movants cannot plausibly dispute—and do not dispute—that the United States had Article III standing to challenge a state law that interferes with the immigration policy set out by Congress. Instead, they effectively argue that Nebraska stripped the district court of jurisdiction by adopting a litigating position that aligned with the position taken by the United States. Mot. 18-20. But the United States does not lose the right to a judicial remedy merely because its opponent agrees with its legal position. And because Nebraska was continuing to provide in-state tuition to unlawful aliens that federal law makes ineligible for such benefits, its legal position neither redressed the United States' injury nor otherwise deprived the United States of standing.

14

In this respect this case is on all fours with the Supreme Court's decision in *United States v. Windsor*, 570 U.S. 744 (2013). There, the Court held that the parties' agreement that the Defense of Marriage Act was unconstitutional did not deprive the district court of jurisdiction where, among other things, the United States continued to comply with the statute and would not pay money to plaintiff absent a court order requiring it to do so. *Id.* at 758-59; *see also INS v. Chadha*, 462 U.S. 919, (1983) (parties' agreement that statute allowing one House of Congress to order the Executive to deport the respondent did not deprive courts of jurisdiction where the Executive would in fact deport the respondent unless courts prohibited it from doing so). Indeed, not even the dissenters in *Windsor* doubted that the district court had jurisdiction notwithstanding the parties' agreement on the unconstitutionality of the Defense of Marriage Act; the dissent merely urged that there was no jurisdiction over the appeal once the parties got what they wanted. 570 U.S. at 781 (Scalia, J., dissenting).

Movants insist that, unlike in *Windsor*, "there is no evidence that Nebraska 'refus[ed] to give [] effect' to its agreement with the other side's legal position." Mot. 19. Of course there is. Nebraska continued to provide in-state tuition to unlawful aliens pursuant to its unconstitutional statute, and that practice was only stopped by the district court's judgment. Thus, as in *Windsor* and *Chadha*, the district court's decision will have—indeed, already has had—real meaning: before

15

the district court's decision, unlawful aliens who federal law makes ineligible received in-state tuition, and now they no longer do. *Chadha*, 462 U.S. at 939-40 ("[O]ur decision will have real meaning: if we rule for Chadha, he will not be deported; if we uphold § 244(c)(2), the INS will execute its order and deport him." (quotation marks omitted)). *Windsor*, 570 U.S. at 758-59 (reaffirming that this language in *Chadha* was in fact *Chadha*'s holding).

Movants' contrary position is also untenable on its face. On their theory, the United States (or any other litigant) would lack a remedy against a state as to an unconstitutional law whenever its counterparty *expresses agreement* on the merits of the United States' legal position—even if the law continues to be enforced. Indeed, on this logic, a party could perhaps even immunize a law, regulation, or allegedly unlawful practice merely by purporting to agree with a plaintiff's legal position. As the Supreme Court noted in *Chadha*, "it would be a curious result if, in the administration of justice, a person could be denied access to the courts because the Attorney General of the United States agreed with the legal arguments asserted by the individual." 462 U.S. at 939.[3]

---

[3] Movants argued in district court that Nebraska institutions are providing in-state tuition without direction from the Attorney General, but the relevant point is whether the district court's judgment will cause them to cease to provide such tuition. If so (and it is indeed so), the United States's injury is remedied. But if not, it is unclear why Movants think they need a stay pending appeal.

16

**3.** Finally, Movants' allusion to "federalism concerns," Mot. 20, is insubstantial. There is nothing constitutionally suspect about Congress—pursuant to its broad powers over immigration and foreign affairs—directing that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a State that are denied to United States citizens. And Section 1623 does not issue any commands to state legislatures or any other organ of state government. It is just ordinary preemption legislation, that operates by preempting contrary state laws. Movants' reliance on *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018), in which Congress purported to "command[] state legislatures to enact or refrain from enacting state law," *id.* at 475, is thus inapt.

### B. Movants also will not succeed in challenging the denial of intervention.

For reasons previously discussed, this Court can deny the motion without considering whether plaintiffs are likely to succeed in their challenge to the district court's denial of intervention. In any event, they will not succeed in that challenge either.

1. "[A] party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24." *United States v. Metro St. Louis Sewer District*, 569 F.3d 829, 833 (8th Cir. 2009). Movants failed to establish standing. Movant True Potential is a volunteer organization with no paid employees, which

17

aims to fund tuition for undocumented students or those living in Nebraska under deferred action, TPS, DACA, or other immigration statuses. Add.005-006. Likewise, Orel Alliance provides tuition assistance to Ukrainian students, in addition to other services. Add.016.

As the district court noted, Movants have not actually "identified any specific recipients of their assistance or services that are aliens unlawfully present in the United States." Add.067. But even if they had, Movants would not have standing. Movants do not assert that they have any obligation to provide tuition assistance to such individuals; it is entirely voluntary philanthropy. As the district court noted, Movants also do not profit from the assistance or otherwise expect to receive anything in return that they will no longer receive. Add.070. Even if they choose to continue funding such assistance at higher cost, that sort of self-imposed harm is insufficient to confer standing. *See Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1227-28 (D.C. Cir. 2024).

Movants dismiss these obvious points, contending that "Article III does not privilege for-profit organizations over philanthropic ones." Mot. 13. But the problem with their position is not that they are philanthropic organizations, but rather that the district court's judgment does not cost them any money or prevent them from doing anything they want to do. The judgment may cost someone else—a student no longer eligible for in-state tuition—money, and Movants may elect to defray those costs

18

(though they have no legal obligation to do so). But even the case on which Movants rely accepted the rule that "an organization cannot spend its way to standing." *Get Loud Arkansas v. Jester*, 171 F.4th 1058, 1064 (8th Cir. 2026) (quotation marks omitted). The fact that provided a basis for standing in that case is what is missing here: that case was brought by an organization that conducted voter-registration activities, and the rule at issue in that case "effectively forbade [the plaintiff] to use its online registration tool." *Id.* "When regulations require or forbid some action by the plaintiff, standing is usually easy to establish." *Id.* (quotation marks omitted). The judgment at issue here, by contrast, does not forbid Movants from doing anything.

**2.** Intervention would have also been properly denied because the challenged provisions are preempted as a matter of law. Rule 24(c) requires an intervention motion to "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Just as a putative intervenor must satisfy ordinary standing requirements, the putative intervenor must state a claim or defense that can survive Rule 12. *See, e.g., U.S. v. Glens Falls Newspapers*, Inc., 160 F.3d 853, 856 (2d Cir. 1998); *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988); *R.I. Fed'n of Teachers. v. Norberg*, 630 F.2d 850, 854-55 (1st Cir. 1980); 7C Fed. Prac. & Proc.

19

Civ. § 1914 (3d ed.) ("The proposed pleading must state a good claim for relief or a good defense." (footnotes omitted)).

The district court correctly concluded that the challenged provisions are preempted. That issue, moreover, is purely legal, and any defenses Movants could offer would not withstand either a motion for judgment on the pleadings under Rule 12(c), or a motion to dismiss under Rule 12(b)(6). So any intervention would be legally futile, even if Movants had standing.

## II.     The other stay factors strongly favor United States.

Because Movants have no likelihood of success on the merits, the Court should deny a stay without consideration of the remaining stay factors. But consideration of these factors only underscores that the relief Movants seek is not warranted.

This Court has held that, in most instances, constitutional violations are sufficient to qualify as irreparable harm. *Powell v. Ryan*, 855 F.3d 899, 904 (8th Cir. 2017) (en banc); *Ng v. Bd. of Regents of Univ. of Minnesota*, 64 F.4th 992, 999 (8th Cir. 2023). And other courts have similarly held that irreparable harm necessarily results from the enforcement of a preempted state law, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013), and that "[f]rustration of federal statutes and prerogatives are not in the public interest," *United States v. Alabama*, 691 F.3d 1269,

20

1301 (11th Cir. 2012). No reasonable analysis of the equities would warrant this Court directing the state to continue enforcing a facially invalid statute.

Movants reference harm to currently enrolled students, and fault the district court for purportedly failing to perform a full equitable analysis with respect to an injunction that applies to currently enrolled students. Mot. 16. But no students have participated in this case, and the State of Nebraska is presumed to represent the interests of its residents, who might have conflicting views on the issues presented here. *See Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023) (noting that interests to opposing party and public interest merge in the case of a governmental defendant). The only interest asserted by a party that has participated in this proceeding and objects to the district court's judgment is Movants' voluntary desire to provide philanthropy at lower cost. As discussed, that interest is not even sufficient to establish Article III standing, let alone to support a request for an order that would reinstate operation of facially invalid state statutes.

## CONCLUSION

The Court should deny Movants' motion for a partial stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. McARTHUR

21

*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY

<span style="text-decoration: underline;">*/s/ Andrew M. Bernie*</span>
ANDREW M. BERNIE
*Attorneys, Appellate Staff*
*Civil Division, Room 7539*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*

JUNE 2026

22

# CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,095 words. This response also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font.

*/s/Andrew M. Bernie*
ANDREW M. BERNIE

Appellate Case: 26-2124    Page: 28    Date Filed: 06/22/2026 Entry ID: 5653092

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/Andrew M. Bernie*
ANDREW M. BERNIE